[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION ON MOTION TO EXEMPT WORKERS' COMPENSATIONCOMPENSATION AWARD FROM MARITAL ESTATE
The defendant moves that the Court determine that his workers' compensation settlement in the gross amount of $100,000 be exempt from the payment of alimony and/or support and/or property distribution. The motion is made subsequent to a motion for contempt filed by the plaintiff claiming failure to pay the pendente lite order entered by the Court on September 21, 1994. That order, in addition to ordering child support and alimony, ordered the defendant to file a current financial affidavit. CT Page 2540
The defendant claims, as part of his argument that Connecticut General Statutes Sec. 31-320, which states in part, "All sums due for compensation under the provisions of this Chapter shall be exempt from attachment and execution and shall be nonassignable before and after award," exempts this settlement from consideration in this action.
The purpose of this statute is ". . . to preclude the possibility that an injured person, who has no means of supporting himself or his dependents in the difficult period between his accident and the payment of his award will make a distress assignment in advance of his award for less than fair value, or that he would be forced by private conditions to become a ward of the state." McDougald v. Norton,361 F. Sup. 1325, 1328 (1957) (D. Conn.)
Just as workers' compensation settlements are not immune from levy by the State to recoup public assistance paid during the period of disability (McDougald, supra), similarly Workers' Compensation payments are not barred from consideration, by C.G.S. § 31-320, as resources available to meet the support obligations to his family, as provided by C.G.S. § 46b-81, 46b-82, 46b-83 and 46b-84. See, also,State v. Reed, 5 Conn. Cir. 69 (1968). Had the legislature chosen to exempt Workers' Compensation payments from being considered for the support and maintenance of the worker's spouse and children, which is inconceivable, it would have done so by including such a specific exemption in C.G.S. § 31-320. The statute does not exempt workers' compensation payments from judicial appropriation for the payment of obligations to the worker's spouse or children.
The defendant further argues that for reasons other than C.G.S. § 32-320 the $100,000 settlement by the defendant and employer/insurer should be determined to be exempt, or that certain amounts thereof, should be determined to be exempt from consideration in this action. The argument is twofold. First, that the amount of the settlement is not the payment of benefits, but rather that it is merely a matter of the insurer/employer avoiding future risk of the exposure to pay future unaccrued benefits for medical, earning capacity differential, and re-injuries or relapse from recovery from the injury. CT Page 2541
The second part of the argument appears to be that since a part of the settlement, that portion which represents a "Specific" award for permanent partial disability, can be mathematically calculated, that at least that this portion of the settlement should be exempt from appropriation for the payment of alimony/support/distribution of the marital estate.
The mathematical component representing the "Specific" award is $24,085.00 (471.89 x 51.04 weeks representing 22% disability of the left master wrist). This "Specific" award was agreed to by the compensation parties, and approved by the Commissioner on August 4, 1992. The date set out in the "Specific" Agreement as to Workers' Compensation Form, as the date of Maximum Medical Improvement, and hence the date for commencement of "Specific" entitlement was July 22, 1992.
The settlement was entered into on November 10, 1992 after the payment of some weekly checks for "Specific" payments, toward the payment of the 51.04 weeks of "Specific" award. It is unclear as to whether the $100,000 settlement was paid in addition to the amounts previously paid on the Specific award, "new money" so to speak, or conversely whether the employer-insurer deducted the amounts previously paid on the specific award. In the context of the issues as presented, the Court can assume that the previously paid specific amount was deducted from the $100,000 settlement.
First, dealing with the question of whether the specific payments are exempt from consideration. The defendant cites out of state cases, none of which appear to deal with the precise issue of this case. The case of Rodriguez v. Rodriguez,42 Conn. Sup. 34 4 CONN. L. RPTR. 449 (1991) dealt with the narrow issue of whether specific disability payments were considered income for the purposes of the Child Support Guidelines. That Court held that the "Specific" payments in that case were notincome for the purposes of being listed as income in the Child Support Guidelines.
To determine whether the "Specific" payments are income
requires a careful analysis of the facts of each case. The Court does not, in the Rodriguez opinion, engage in a factual analysis as to the circumstances enabling the Court to come to that conclusion. The Rodriguez case properly articulates the fact that the "Specific" payments are based upon a theory of general handicap, and hence continuing loss of earnings are CT Page 2542 not a prerequisite for payment of a "Special" award.
An analysis of the applicable statute is appropriate. C.G.S. § 31-308 (a) states that where a person has sustained partial incapacity he shall be paid 80% of the difference between wages currently earned by an employee in his former job position vs the amount that he is able to earn after the injury. If he is ready, willing and able to return to work and no other (substitute) work is available to him he is paid his full compensation for so long as he is incapacitated. Both types of partial disability benefits are limited to no longer than 750 weeks (15 years).
That is the basic lost wage benefit for partial incapacity. There is an exception to, a substitution for, this right to receive the 80% differential upon return to substitute employment and/or the right to receive full wage benefits while seeking substitute employment.
General Statutes Sec. 31-308(b) provides that for certain described losses, including loss to the hand at or above the wrist, as is the circumstance in this litigation, the injured party shall receive a payment at his full compensation rate, for a number of weeks specified by the statute for that particular loss. The statute sets a number of weeks of payments for total loss of the member, such as amputation, and reduces the total loss number of weeks to the number of weeks representing the actual Percentage of total loss, of the member, caused to that employee. Benefits for partial wage loss benefits (CGS § 31-308a) cease as of that date, and are replaced by the receipt of a full weekly compensation check for the specified number of weeks.
The key to this statute is that these Specific payments are specifically declared by the statute to be in addition to the usual compensation for total incapacity ". . but in lieu ofall other Payments for compensation . . ." Hence, one cannot collect a payment for actual partial loss of earnings (measured by income earned in substitute employment, or while seeking substitute employment (§ 31-308a), while at the same time collecting or being entitled to Specific payments under § 31-308b. Fortunately for injured employees whose "Specific" payments have run out and who have not been able to obtain substitute employment the Commissioner may, in his discretion award new lost wage benefits in such amounts and for such CT Page 2543 duration as he deems appropriate (C.G.S. § 31-308a). It is further noted that the Commissioner, in his discretion may order that where loss of earnings has continued during the time where specific payments would be payable the Commissioner may order that the basic partial incapacity payments continue, and postpone the "Specific payments", provided that those lost wage payments be deducted from the otherwise "Specific" amounts to which he would have been immediately entitled to under C.G.S. § 33-308b.
Lastly, "If there is no loss of earnings resulting from the injury, payments shall be made in accordance with the provisions of section (b) of this section" C.G.S. Sec. 31-308(b). Stated otherwise, the specific will be paid to the employee even if there is no loss of earnings after attaining maximum improvement and returning to full time full wage employment.
The case of Franko vs. Schollhorn Co., 93 Conn. 13, (1918) upon which the Rodriguez Court, supra, relies, does not deal with the subject at hand. The Franko Court dealt with the 1918 statute which stated that the specific payments were to be "in lieu of all other payments." See Franco, supra, p. 18. The employer argued that the provision was to be interpreted to mean that the "Specific" was intended to be in lieu of all benefits for incapacity, both total and partial disability. The Court determined that the payments were to be interpreted to be in addition to and not in lieu of payments for total incapacity. The statute has been revised to incorporate that determination.
It is clear that the "Specific" payments are not intended to always be separate and apart from, and totally oblivious to, the loss of earnings incurred by many employees as a result of partial incapacity. It would be a strange law indeed which would provide income support for loss of earnings through the loss of undefined parties of the body, for up to fifteen years, while at the same time being oblivious to the loss of earnings of an employee sustained through the loss of an eye, an arm or a leg.
Had the legislature intended that the specific award be completely separate and apart from any consideration whatsoever for loss of earnings caused by enumerated partial disability, a personal award so to speak for only the loss of CT Page 2544 personal aspects of life, the specific would have been designated as "in addition to" and not "in lieu of" the partial disability benefits for loss of earnings set forth in § 31-308(a). This Court will not interpret a statute such as to effectuate a result whereby the dependents of an employee who is receiving payments for partial disability for some types of injury would receive support from the partial disability payments, while denying such support to the dependents of another because the wage loss is caused by injury to a specific listed part of the body. Such a result could not have been intended by the legislature.
Whether "Specific" payments are or are not income depends on each individual circumstance. The excess of specific payments, above and beyond the amount representing loss of income, are property and are available for consideration as deviation factors under child support Guidelines Sec.46b-215a-3(b)(1)(A) ". . . substantial assets." Similarly such property may be considered as assets or estate under C.G.S. § 86b-81, 82, 83 and 84. See, Tyc v. Tyc,
12 Conn. L. RPTR. 215 (1994). Whether and to what extent the "Specific" payments constitute payments for loss of earnings, and hence "income" for child support guidelines depends on the circumstances of each case.
The trial court may also wish to take into consideration, in exercising its equitable powers, that the theory of specific disability payments, to the extent that those payments represent payment above and beyond wage loss, compensate for the loss of an individual's ability to engage in and enjoy the non-economic aspects of life. When this occurs there would be non-economic components to such an award — similar to the loss of health (pain and suffering) which are traditionally recognized as compensable personal loss as Common Law. As aforesaid, this depends upon whether and to what extent the specific payments exceed partial disability (§ 31-308a) wage loss benefits for which they substitute in given case.
Although non-economic awards have not been considered to be of such a nature as to be exempt from levy, despite the theory that such awards are a return to the party of a bodily function which as taken from him, yet an argument can be made, in equity, that this may be a factor to take into consideration when determining the extent to which the non-wage CT Page 2545 loss aspect of specific payments are to be considered for alimony, child support and property distribution. The Court knows of no rule of law, in this state, which insulate Workers' Compensation non-wage-loss aspects of disability payments, or common law compensation for pain and suffering and disability payments, so as to be immune from consideration for alimony, support or property distribution.
The settlement amount as concerns "Specific" disability is not in all instances so detached from loss of earnings as to be automatically eliminated from consideration as income.
As to the aspects of this settlement which the defendant does not attribute to the "specific portion," a residual net amount of approximately $66,000.00. This Court is not able to dissect the settlement into any component parts. Settlements of this nature do not generally spell out the component parts, if any, upon which the employer and employee are in agreement. The mere fact of a settlement does not presuppose that the settling parties agreed to a particular payment or future exposure for any one of the elements of a claim of this nature — work loss, medical, future spontaneous increase of disability, relapse, reinjury, litigation expense and the like. Often each of the negotiating parties see each item of exposure completely different than does the other. In the final analysis the question of whether the "Specific" payments are or are not income is largely academic and a matter of form. If not income, they are assets to be dealt with under the principles of equity.
The defendant, during any and all aspects of this litigation concerning finances, is at liberty to present evidence to the Court as to the probability of, and the amount, of future medical bills, continuing diminution of earnings, private rehabilitative training and the like so as to delineate probable future expenses or loss to set off from funds to be listed as assets.
C.G.S. § 31-315 gives to the Commissioner the power to open and modify the judgment (settlement) in the event that circumstances so warrant. See, Sugrue v. Champlin, 128 Conn. 574,580 (1942). The mere fact that completely unexpected and unforeseeable circumstances may possibly happen to anyone, in the future, does not insulate these funds from consideration by the Court. Improbable and unpredictable future CT Page 2546 circumstances are not a proper consideration for set-off in this litigation.
Summarizing: The Workers' Compensation Act constitutes an interwoven series of statutes the primary purpose of which is to protect the employee and his dependents from destitution caused by loss of the economic means to carry on life's economic activities. Whether, and to what extent specific payments represent loss of earnings depends upon a specific analysis of each individual's earnings circumstances subsequent to the resumption of that employee's ability to engage in gainful work of some type after total disability has ended and partial disability has been evaluated, forming the basis for the "Specific" award. Hence specific payments are not automatically excluded from consideration in whole or in part as income for the purposes of the child support guidelines.
As to non-"Specific" aspects of settlement. By settling the case, the employee-defendant has waived, has extinguished his right to receive lost wage benefits under C.G.S. § 31-308a
in the event that he has continuing loss of earnings after the fifty one weeks of specific payments run out. This is an extremely valuable right, as it is not uncommon for an employee to find it very difficult to obtain substitute work having incurred permanent partial disability. He has arguably waived his rights to receive additional loss wage benefits should there be a relapse or reinjury, per C.G.S. § 31-307b. His family has a right to the protection of the Workers Compensation Act. The settlement is neither solely personal nor is it some nebulous or esoteric personal buy out of risk detached from present and future protection for the family which is provided by the Workers Compensation Act.
The motion to exempt Workers Compensation award from marital estate is denied.
L. Paul Sullivan J. CT Page 2547